**In the Matter of the COMMITMENT OF R.L.**

**R.L., Appellant–Respondent,**

**v.**

**LOGANSPORT STATE HOSPITAL, Appellee–Petitioner.**

No. 17A05–9506–CV–198.

Court of Appeals of Indiana.

April 30, 1996.

Hugh N. Taylor, Auburn, for appellant.

Pamela Carter, Attorney General, for appellee.

**OPINION**

SHARPNACK, Chief Judge.

R.L. appeals the trial court's order to commit him. The sole issue for review is whether the trial court erred by ordering a regular commitment pursuant to Ind.Code § 12–26–7 when R.L. previously had been subject to a temporary commitment under I.C. § 12–26–6. We affirm.

The facts most favorable to the regular commitment order follow. On August 11, 1994, an officer from the Ashley Police Department filed an application for the emergency detention of R.L.[1] The officer alleged that R.L. had a psychiatric disorder and that R.L. was dangerous to himself an others because "he lights his crotch area on fire, and ask [sic] females to put the fire out." Record, p. 9. The application was granted, and R.L. was admitted to McCray Hospital. On August 11, 1994, Dr. Francis Cyran completed a report following the emergency detention, as well as a physician's statement. Dr. Cyran indicated that R.L. was suffering from antisocial personality disorder and pyromania. On August 12, 1994, the DeKalb

---

1. An emergency detention limits the detention of an individual to seventy-two hours. I.C. §§ 12–26–5 et. seq. A report must be made to the trial court evaluating the individual's mental health. I.C. § 12–26–5–5. After receiving the report, the trial court may order a hearing to determine whether the individual is in need of further involuntary treatment, such as a temporary or regular commitment. I.C. § 12–26–5–9(a)(3).

Superior Court ordered the continuing detention of R.L. and set a hearing date. After a hearing on August 15, 1994, the court ordered the temporary commitment of R.L. for a period not to exceed ninety days.[2] In addition, the trial court ordered that R.L. be transferred from McCray Hospital to Logansport State Hospital ("LSH") after the McCray Hospital staff discovered a burnt hospital gown in R.L.'s room.

On October 24, 1994, LSH petitioned the court for an extension of temporary commitment. The petition was completed by Dr. Ruta Jauniskis. Dr. Jauniskis asserted that R.L. continued to suffer from a psychiatric disorder, was dangerous, and was in need of continuing custody, care or treatment for a period expected to exceed ninety days. On the same day, LSH petitioned for regular commitment and attached a physician's statement from Dr. Jauniskis.[3] Dr. Jauniskis indicated that R.L. needed commitment until the time when the court determined that such treatment should be terminated.

On November 2, 1994, the trial court held a hearing and entered an order of temporary commitment for a period not to exceed ninety days. However, the trial court found that R.L. was in need of commitment for a period expected to exceed ninety days and, accordingly, ordered the parties to submit legal memoranda regarding the court's authority to order a regular commitment pursuant to I.C. § 12–26–7–2.

On January 10, 1995, LSH filed a second petition for regular commitment. LSH filed a physician's statement by Dr. Jauniskis again stating that R.L. was in need of commitment for a period expected to exceed ninety days and until the court terminated

the commitment. LSH also submitted a seventy day interval report, which updated R.L.'s treatment. A hearing was set for January 31, 1995. After the hearing, the trial court ordered the regular commitment of R.L. He now appeals this order.

■ The sole issue for our review is whether the trial court erred in ordering the regular commitment of R.L. following the period of temporary commitment. This case is one of first impression in Indiana.

R.L. argued that the language of I.C. § 12–26–7–2 expressly prohibits the regular commitment of an individual who had previously been the subject of a temporary commitment.[4] LSH argued that it would be "ludicrous" to read I.C. § 12–26–7–2 in isolation from the other chapters of the statute relating to mental health commitments and otherwise ignore the "obvious interrelationship in the mental health commitment statutes." Appellee's brief, p. 4; Record, p. 198. Instead, LSH asserted that the statute must be interpreted logically to allow a court to begin with the least restrictive and shortest term of confinement and then advance to a more restrictive and longer term of confinement if needed. During the hearing, LSH provided the following support for its position:

"[I]t would be ludicrous to assume that while an individual is under [temporary] commitment that you would not initiate regular proceedings when the commitment is due to expire. Otherwise, the result would be that anybody under a temporary commitment would have be [sic] let out and you'd start from scratch again, which would put the person at risk, interrupt the therapy, put the public at risk. And that

---

**2.** A temporary commitment is sought for an individual believed to be mentally ill and either dangerous or gravely disabled. I.C. § 12–26–6–1. The commitment period is authorized for up to ninety days. *Id.* Within three days after a petition for temporary commitment has been filed, the court must set a hearing. I.C. § 12–26–6–4. If the court finds the individual to be mentally ill and either dangerous or gravely disabled, it may order the individual to be committed to an appropriate facility. I.C. § 12–26–6–8(a). Within twenty days from the end of the maximum ninety day commitment period, a report must be filed with the court. The report must address the

mental health of the individual and the individual's continuing care needs. I.C. § 12–26–6–11.

**3.** A regular commitment is the most restrictive form of involuntary treatment and is proper for an individual whose commitment is expected to exceed ninety days. I.C. § 12–26–7–1.

**4.** On appeal, R.L. neither challenges the trial court's finding that he was mentally ill nor that he was both dangerous to himself and others. Instead, R.L. challenges only the court's authority to order a regular commitment following R.L.'s period of temporary commitment.

certainly is not what any of the cases show. There's no case on point because I think it's fairly obvious that, ... patients ... go from temporary commitments. And then if they're not able to return to their community a petition for regular [commitment] is begun.... And if you're going to ask for a regular commitment you would want to do that before the temporary would expire, otherwise you're exposing the patient to interruption in therapy and exposing the public at large to a person who still requires ongoing treatment."

Record, pp. 198–199. Ultimately, the trial court accepted LSH's rationale and ordered the regular commitment. Upon our review, we find that the trial court acted within its authority when it ordered the regular commitment of R.L.

■ At the outset, we note that we must review the statute as a whole. *Kinder v. Doe,* 540 N.E.2d 111, 114 (Ind.Ct.App.1989). In addition, viewing the structure of the Indiana Code is useful to address R.L.'s argument. The organizational scheme of the code is described in the Foreword to the Indiana Code as follows:

"The Indiana Code comprises 33 major groupings of laws, called titles. Each title is divided into articles, with the articles further subdivided into chapters. Chapters are made up of individual statute sections. The Code's numbering scheme involves the use of a four part numeric citation for statute sections. The four parts, separated by dashes designate in order the title, article, chapter, and section. The contents of a chapter may be indicated through the use of a three-part, and of an entire article by the use of a two-part citation. For example:

[IC 12–26–7–2 refers to title 12, article 26, chapter 7, section 2;

IC 12–26–7–2 refers to title 12, article 26, chapter 7; and

IC 12–26 refers to title 12, article 26]"

I.C. Foreword, p. XII (example changed from original)

The crux of R.L.'s argument is that a regular commitment may not be imposed on an individual who had previously been subject to temporary commitment. R.L.'s argument is founded upon I.C. § 12–26–7–2 which provides in part: "**12–26–7–2. Persons eligible to file petition for commitment.**—(a) This section does not apply to the commitment of an individual if the individual has previously been committed under IC 12–26–6." I.C. § 12–26–7–2. Based on this provision, R.L. concludes that a regular commitment sought under I.C. § 12–26–7 may not be obtained after a temporary commitment has been achieved pursuant to I.C. § 12–26–6. Thus, R.L. claims that his regular commitment was inappropriate because he was already subject to a temporary commitment under I.C. § 12–26–6.

However, in light of words used in I.C. § 12–26–7–2 and the foreword to the Indiana Code, it is clear that R.L. misunderstands the limitation of the statute. The statute provides that "this section" does not apply in cases where the individual had previously been committed under I.C. § 12–26–6. "Section" as identified by the foreword refers to the final number in the citation I.C. § 12–26–7–2. The limitation does not apply to the entire chapter of regular commitments authorized by I.C. § 12–26–7. Instead, the provision merely limits the manner in which a regular commitment may be obtained. To demonstrate the application of this statutory limitation, a closer inspection of the statute is warranted.

A temporary commitment is governed by I.C. § 12–26–6. This type of proceeding is initiated for an individual believed to be mentally ill, dangerous or gravely disabled, and in need of involuntary treatment for a period not to exceed ninety days. I.C. § 12–26–6–1. A hearing must be set within three days from the filing of the petition for temporary commitment and, after the hearing, the trial court may order the individual to be committed. I.C. § 12–26–6–4, 12–26–6–8(a). One additional period of temporary commitment may be obtained. I.C. § 12–26–6–10. Within twenty days before the end of the first or second period of temporary commitment, a report must be filed to the trial court. The report must indicate the mental condition of the individual, whether the individual is dangerous or gravely disabled, and whether the

individual "needs continuing care and treatment in a facility *for a period of more than ninety (90) days.*" I.C. § 12–26–6–11 (emphasis added).

A regular commitment is governed by I.C. § 12–26–7. A regular commitment proceeding is appropriate when an individual's treatment is expected to exceed ninety days. I.C. § 12–26–7–1. Ind.Code § 12–26–7–4 authorizes the trial court to order a hearing for regular commitment. A hearing must be set under the following circumstances:

"(a) Upon receiving:

(1) A petition under section 2 [IC 12–26–7–2] of this chapter; or

(2) A *report under IC 12–26–6–11* that recommends treatment in a facility for more than ninety (90) days;

the court shall enter an order setting a hearing date.

(b) If an individual is currently under a commitment order, the hearing required by subsection (a) must be held before the expiration of the current commitment period."

I.C. § 12–26–7–4 (emphasis added). If at the completion of the hearing the trial court finds the individual to be mentally ill and either dangerous or gravely disabled, it may order a regular commitment. I.C. § 12–26–7–5.

The express language of I.C. § 12–26–7–4 authorizes two separate paths from which the trial court can properly enter an order of regular commitment. First, a formal petition for regular commitment may be filed by various individuals, including a police officer, friend, relative, spouse, or health officer pursuant to I.C. § 12–26–7–2(b). Typically, this form of regular commitment is ordered upon finding that an individual detained pursuant to an emergency detention needs a lengthier, more restrictive form of involuntary treatment. *See* I.C. § 12–26–5–11(d).

The second way to obtain an order of regular commitment is to file a report under I.C. § 12–26–6–11, which is the temporary commitment provision. As previously mentioned, a hearing must be set to determine whether regular commitment is appropriate where the report filed to the trial court (within twenty days from the end of the temporary commitment period) indicates the temporarily committed individual needs continuing care for a period of more than ninety days. I.C. § 12–26–7–4(2); *see* I.C. § 12–26–6–11. If, after the hearing, the court finds the individual to be mentally ill and dangerous or gravely disabled, it may enter an order of regular commitment. I.C. § 12–26–7–5.

The mandate of I.C. § 12–26–7–2 is not inconsistent with the framework set forth in I.C. § 12–26–7–4. Recognizing that there are two independent avenues under I.C. § 12–26–7–4 from which the trial court can enter a regular commitment, the provision in I.C. § 12–26–7–2 that "this section" does not apply to those previously subject to a temporary commitment is logical. Ind.Code § 12–26–7–2 does not apply to an individual who previously had been temporarily committed because that individual would not be committed pursuant to a *petition* for regular commitment. Instead, that individual would be processed pursuant to the report filed during the individual's temporary commitment and on the recommendation of the facility superintendent or attending physician under I.C. § 12–26–6–11. Therefore, I.C. § 12–26–7–4 specifically authorizes the commencement of proceedings for entering an order of regular commitment following a temporary commitment and provides the proper procedural mechanisms to do so.

Applying this analysis, we find that R.L. was temporarily committed on November 2, 1994. This period of commitment was to end on January 31, 1995, ninety days from the entry of the temporary commitment order. On January 10, 1995, twenty-one days before the end of the temporary commitment period, LSH filed a report indicating that R.L. needed treatment for a period expected to exceed ninety days. Thereafter, a hearing was set pursuant to I.C. § 12–26–7–4. After the hearing, the trial court found that R.L. was mentally ill and dangerous to himself and others and, accordingly, ordered the regular commitment of R.L. pursuant to I.C. § 12–26–7–5. Therefore, since the statutory procedures were followed, the trial court did not err in ordering the regular commitment of R.L.

For the foregoing reasons, the order of the trial court is affirmed.

AFFIRMED.

RUCKER and NAJAM, JJ., concur.